ROYAL UNION LIFE INS. CO., Respondent, v. BOYNTON et al, Appellant.

(222 N. W. 596.)

(File No. 6685. Opinion filed December 31, 1928.)

*W. T. Wills,* of Butte, Neb., and *W. J. Hooper,* of Gregory, for Appellants.

*Windsor Doherty,* of Winner, for Respondent.

MISER, C. ██ Respondent insurance company is the assignee of a real estate mortgage on lands owned by appellant. In an action brought to foreclose this mortgage, respondent obtained an order appointing a receiver for the mortgaged premises. The trial court found that the mortgage debt was $23,416, and that the mortgaged property did not exceed in value the sum of $21,000. Appellant contends that the value of the mortgaged premises exceeds the amount of the mortgage indebtedness, and that this contention is supported by the great preponderance of the evidence presented to the trial court. The only evidence presented to the trial court was the affidavits which appear in the record before us.

It is therefore the duty of this court to review the evidence "unhampered by the rule that a trial judge, who has observed the demeanor of the witnesses, is in a better position to intelligently weigh the evidence than an appellate court." Fairmont & V. Ry. Co. v. Bethke, 37 S. D. 446, 159 N. W. 56; Smith v. Hart, 49 S. D. 582, 207 N. W. 657, 46 A. L. R. 811.

■ The evidence as to the value, which was introduced by respondent, consisted of an allegation in the complaint, verified on information and belief by respondent's attorney, that the value did not exceed the sum of $21,000, and five affidavits which may be summarized thus: Stanek says he is well acquainted with the land, knows its value, and that it does not exceed $20,183.80. Wiebelhaus makes an identical statement. Slocum says he is well acquainted with the land; 400 acres is either hilly or unfit for cultivation and worth not over $10 an acre; the buildings are in a dilapidated condition; and the balance of the land is worth about $40 an acre. The auditor of Gregory county states the assessed valuation of the mortgaged premises for the year 1927 is $19,721. Schewman says that he rents part of said land and G. H. Goedel rents the balance; the buildings are out of repair; half of the land is worth about $40 an acre and the other half not over $10 an acre; the value of improvements on the land rented by him is not over $1,500; on the land rented by Goedel not over $1,200.

The affidavits on behalf of appellants may be summarized thus: Honke, a banker at Butte, Neb., is well acquainted with the land and with land values in Gregory county. The two farms aggregate 776 acres. The improvements on the Goedel tract consist of a 5-room frame house, a frame barn 24x30 with shed attached, a hogshed 12x16, and a machine shop, all well built and in good repair, frame chicken house, flowing well furnishing an abundant supply of pure water, abundant timber, soil of heavy black loam with first-class pasture, and a first-class road to the railroad town of Fairfax, 12 miles distant. The improvements on the Schewman tract are a frame house of 6 rooms and bath, frame barn, two small chicken houses, all well built, icehouse of 40 ton capacity, corncribs and other outbuildings. Both tracts, fenced and cross-fenced, with improvements, are worth $38,800. J. H. Meyhaus, banker at Bonesteel, C. F. Auerswald and Chas. Mashek, stockmen at Fairfax, Emil Nachtigal and Fred Bentz, farmers at

Fairfax, John Ellerman, banker at Fairfax, all in Gregory county, Edgar R. Johnson, banker in the adjoining county of Boyd, Neb., engaged in the farm loan business, Sol Fried, executor of the estate of a former owner of the land, all make similar statements as to qualifications to testify as to value, and give identical descriptions of improvements and estimates of value to that contained in the affidavit of Max Honke. Johnson makes additional affidavit that appellant Boynton assigned to the First National Bank of Butte, Neb., of which affiant is cashier, the rents of said lands, to secure the indebtedness of $1,500; and affiant Ellerman makes an additional affidavit that the land is in as good state of cultivation as any land owned by the best farmers in the country. This is corroborated by Nachtigal and Goedel, tenant.

In rebuttal, respondent's attorney says that appellant Boynton is the president of the First National Bank of Butte, of which E. R. Johnson is cashier. The receiver, the manager of the respondent insurance company, says that Goedel, the tenant, had recently told him that the buildings were in a run-down condition, and that Boynton had told him (Goedel) he would not make repairs because he did not intend to redeem. The balance of the receiver's affidavit corroborates that of Schewman as to values of land and improvements.

Respondent's complaint shows that the mortgage sought to be foreclosed was given on April 29, 1918, to secure a note of $20,000, and that, on April 30, 1923, respondent accepted and recorded a renewal agreement with one Harman, the then owner, whereby Harman agreed to pay the mortgage indebtedness of $20,000 on May 1, 1928; that there was an unpaid second mortgage of $10,000 outstanding. The proceedings to foreclose the mortgage and to have a receiver appointed were instituted in October, 1927.

From the foregoing, it appears that seven witnesses for respondent estimate the value of the property at less than $21,000; nine witnesses for appellant estimate it in excess of $30,000. So far as the affidavits show, the evidence for appellant was no less credible than that for respondent. No witness was directly impeached. Whatever the land may actually be worth, the evidence for appellant shows not only more witnesses, but witnesses better qualified to testify to values. It is true that nine of the witnesses for appellant sign lengthy affidavits almost identical in language, in

which the improvements on the property, the condition thereof, and the value of the property is stated in identical language. In response thereto, it may be said that the very brief affidavits of respondent's witnesses Stanek and Wiebelhaus are, excepting only the name of affiant, in identical language.

Here we have an application for the appointment of a receiver. It is true that section 2475, R. C. 1919, contains the following language: "A receiver may be appointed * * * in an action by a mortgagee for the foreclosure of his mortgage * * * where it appears * * * that the conditions of the mortgage have not been performed, and that the property is probably insufficient to discharge the mortgage debt."

■■ Without attempting to decide any question relating to receiverships incidental to mortgage foreclosures other than the sufficiency of proof of the value of the mortgaged premises when such a provisional remedy is sought as herein, certain principles which govern the appointment of receivers may be accepted as true. One of these is that the appointment of a receiver, being one of the most responsible duties which a court of equity is called upon to perform, the power of appointment should be exercised with great caution. Pom. Eq. Jur. (4th Ed.) § 1488. Another is that it is incumbent upon one seeking to avail himself of this provisional remedy to establish the facts upon which he seeks such relief. 23 R. C. L. 41; 72 Am. St. Rep. 31; 34 Cyc. 132. The circumspection which the trial judge should exercise in weighing the facts is at least not lessened by certain provisions of our statutes, particularly section 1558, R. C. 1919.

When the evidence of the value of the mortgaged premises is viewed in the light of the foregoing principles, the clear preponderance thereof appears to be against the trial court's finding.

Inasmuch as the trial court was not in any better position than this court to weigh such evidence, its preponderance for appellant requires that the order be and it is reversed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.