**FIRST NATIONAL BANK OF BIWABIK, MINNESOTA, and Norwest Leasing, Inc., Plaintiffs and Appellants,**

v.

**BANK OF LEMMON, Defendant and Appellant,**

and

**First State Bank of Miller, Defendant and Appellee.**

Nos. 18816, 18823.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1995.

Decided Aug. 2, 1995.

James M. Cremer, Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, for plaintiffs and appellants.

Robert M. Nash, Wilson, Olson, Nash, Becker & Smoot, Rapid City, for defendant and appellant.

Roger W. Damgaard and James Moore, Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee.

**Circuit Judge Robert L. TIMM, serving in the place of Justice Robert A. Amundson, who has deemed himself disqualified, delivers the majority opinion of the Court with respect to affirmance of the trial court's judgment.**

**Chief Justice Robert A. MILLER delivers the majority opinion of the Court with respect to the issue of the correct standard of review.**

TIMM, Circuit Judge, writing the majority opinion with respect to the affirmance of the trial court's judgment and dissenting as to the issue of the correct standard of review:

This is an appeal from a declaratory judgment determining fair market value of certain real and personal property. We affirm.

## BACKGROUND

'Lil Feller, Inc. ('Lil Feller) owned and operated convenience stores in Lemmon and Mobridge. In early 1993, 'Lil Feller and the parties in this action, all secured creditors, entered into an agreement whereby the stores would be sold. Sale proceeds were to be divided among the secured creditors.

Bank of Lemmon, First National Bank of Biwabik, Minnesota, and Norwest Leasing, Inc. (Lemmon, Biwabik and Norwest) were secured by personal property. First State Bank of Miller (Miller) was secured by real estate.

Bids were solicited. The solicitation letter read:

Enclosed please find a bid sheet for the Lemmon and Mobridge stores. I realize that you will want to allocate as much of the purchase price to depreciable assets with the shortest useful lives for tax purposes. So that the various parties realize their fair share of the sale proceeds, please make your bid based on true values at this time and at the time a sale is consumated [sic], you may allocate the total purchase price however you would like.

Mike Howes (Howes), president of Howes Oil Co., broke down his bid as follows:

| | LEMMON 'LIL FELLER | MOBRIDGE 'LIL FELLER |
|---|---|---|
| Real Estate | $176,500 | $152,500 |
| Personal Property | $ 48,500 | $ 42,500 |
| TOTAL BID | $225,000 | $195,000 |

Howes' bid was accepted and 'Lil Feller sold the stores to Howes' family corporations (the real estate to I-90 Truck Haven Services, and the personal property to TAN CORP). The closing statement, executed by Howes as president for both purchasing corporations, assigned the following values to the real and personal property:

| | LEMMON 'LIL FELLER | MOBRIDGE 'LIL FELLER |
|---|---|---|
| Real Estate | $ 85,000 | $ 85,000 |
| Personal Property | $140,000 | $110,000 |
| TOTAL BID | $225,000 | $195,000 |

Unable to agree on which set of values would control division of the sale proceeds, the secured creditors sought declaratory relief in circuit court. There, without objection, the bid and closing statement allocations were submitted together with related deposition testimony of Howes. A third set of values was added through testimony of Steve Tomac (Tomac), an appraiser:

|  | LEMMON 'LIL FELLER | MOBRIDGE 'LIL FELLER |
|---|---|---|
| Real Estate | $110,000 | $100,000 |
| Personal Property | $115,000 | $ 95,000 |
| TOTAL BID | $225,000 | $195,000 |

The trial court found several flaws in the appraiser's methodology, and rejected his appraisal as unpersuasive. The closing statement values were also rejected based on Howes' testimony that they were given for tax purposes, and did not represent fair market value. The bid allocation, given in response to the request for "true values," was found by the court to most accurately reflect the fair market value of 'Lil Feller property, real and personal, at the time of sale.

From these findings, Lemmon, Biwabik and Norwest seek to unbind themselves. First, they argue that the parol evidence rule, as a matter of law, precluded trial court consideration of the bid allocation, and compelled acceptance of closing statement values as conclusive on the issue of fair market value. Alternatively, Lemmon, Biwabik and Norwest urge this Court to review the evidence de novo, substitute its judgment for the trial court's, and establish fair market value of the 'Lil Fellers based on either the closing statement or appraisal allocation.

## PAROL EVIDENCE

■ The question of whether the parol evidence rule precluded consideration of the bid allocation and related testimony was first raised post-trial in written argument. The trial court held that failure to object to consideration of the evidence during trial waived the issue. Lemmon, Biwabik and Norwest maintain that their failure to object is of no legal consequence. They suggest that the trial court erred as a matter of law, (citing *Farmers State Bank v. Keiser*, 83 S.D. 354, 159 N.W.2d 388, 390 (1968)):

The parol evidence rule is not a rule of evidence, but is a rule of positive or substantive law founded upon the substantive rights of the parties. 30 Am.Jur.2d *Evidence* § 1017; *Williams v. Williams*, 251 Iowa 260, 100 N.W.2d 185 [(1959)]; *City of Des Moines v. City of West Des Moines*, supra [244 Iowa 310, 56 N.W.2d 904 (1953)]. Admission of testimony in violation of the parol evidence rule does not make the testimony competent, whether it

is admitted without, or over, objection. Such evidence will be disregarded even though no objection is made thereto. *Randolph v. Fireman's Fund Insurance Co.*, 255 Iowa 943, 124 N.W.2d 528, 8 A.L.R.3d 907 [(1963)]; *Williams v. Williams, supra.* Since the parol evidence rule is one of substantive law, the admission, without objection, of such testimony does not preclude the trial court from disregarding it upon a motion to direct a verdict, and an appellate court cannot consider such evidence or give it any weight. 30 Am.Jur.2d, *Evidence* § 1022.

The Farmers State Bank case was submitted under the substantive law of Iowa, not the settled law of South Dakota. *Id.* at 389. The long standing rule in this jurisdiction is that without a motion to strike or an objection to receipt of evidence on the basis that it violates the parol evidence rule, the issue is waived. *Smolnikar v. Robinson*, 479 N.W.2d 516 (S.D.1992); *Cosand v. Bunker*, 2 S.D. 294, 50 N.W. 84 (1891); *McLaughlin v. Wheeler*, 1 S.D. 497, 47 N.W. 816 (1891). That rule applies in this case. Consequently, the parol evidence issue will not be reviewed here.

## FAIR MARKET VALUE

### a) Standard of Review

Lemmon, Biwabik and Norwest ask for de novo review of the evidence on fair market value. They contend that the clearly erroneous rule does not govern this Court's review because the evidence in support of the trial court's finding on this issue was presented by document (bid solicitation letter, bid) and deposition (Howes' deposition).

Miller responds that the clearly erroneous rule controls our review because not all of the evidence on fair market value was presented by document or deposition. Miller points out that the trial court weighed the bid allocation evidence against the in-court testimony of the appraiser, Tomac, before determining fair market value of the property.

This writer agrees the clearly erroneous standard applies, but for reasons other than those suggested by Miller.

Prior to South Dakota's adoption of the federal clearly erroneous rule, Rule 52(a), in cases where the trial judge did not have the opportunity to judge the credibility of witnesses, e.g. where the case was submitted on affidavits or deposition testimony, this Court reviewed the evidence de novo, without deference to the trial court's findings of fact. *See State Auto Casualty Under. v. Ruotsalainen,* 81 S.D. 472, 136 N.W.2d 884 (1965); *Brewster v. F.C. Russell Co.,* 78 S.D. 129, 99 N.W.2d 42 (1959); *Credit Management Service v. Wendbourne,* 76 S.D. 80, 72 N.W.2d 926 (1955); *Royal Union Life Ins. Co. v. Boynton,* 54 S.D. 85, 222 N.W. 596 (1928); *Smith v. Hart,* 49 S.D. 582, 207 N.W. 657 (1926).

The federal standard of review was adopted by rule of this Court in 1966. It is found at SDCL 15–6–52(a) and states:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

Following the advent of this standard of review, de novo review persisted in cases where evidence was presented by deposition or affidavit. *Leslie v. City of Bonesteel,* 303 N.W.2d 117 (S.D.1981); *Pearson v. Franklin Laboratories, Inc.,* 254 N.W.2d 133 (S.D. 1977); *Ayres v. Junek,* 247 N.W.2d 488 (S.D. 1976); *Walsh v. Shoulders,* 87 S.D. 270, 206 N.W.2d 60 (1973); *Geo. A. Clark and Son, Inc. v. Nold,* 85 S.D. 468, 185 N.W.2d 677 (1971), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *Davis v. Interstate Motor Carriers,* 85 S.D. 101, 178 N.W.2d 204 (1970). None of these cases analyzed the language of SDCL 15–6–52(a) or questioned whether de novo review was compatible with the clearly erroneous rule.

At the federal level, courts split on whether Rule 52(a) contemplated de novo review of evidence. *See* Annotation, Application of "Clearly Erroneous" Test of Rule 52(a) of Federal Rules of Civil Procedure to Trial Court's Findings of Fact Based on Documentary Evidence, 11 A.L.R. Fed. 212 (1972).

In 1985, in the case of *Anderson v. Bessemer City,* the United States Supreme Court resolved the question of whether Rule 52(a) reserved de novo review for cases involving documentary evidence:

> Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles, as the Fourth Circuit itself recognized, is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525 [542], 92 L.Ed. 746 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562 [1576], 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177 [179], 94 L.Ed. 150 (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).
>
> This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences

from other facts. To be sure, *various Courts of Appeals have on occasion asserted the theory that an appellate court may exercise de novo review over findings not based on credibility determinations. See, e.g. Orvis v. Higgins,* 180 F.2d 537 (CA2 1950); *Lydle v. United States,* 635 F.2d 763, 765, n. 1 (CA6 1981); *Swanson v. Baker Industries, Inc.* 615 F.2d 479, 483 (CA8 1980). *This theory has an impressive genealogy, having first been articulated in an opinion written by Judge Frank and subscribed to by Judge Augustus Hand, see Orvis v. Higgins, supra, but it is impossible to trace the theory's lineage back to the text of Rule 52(a), which states straightforwardly that "findings of fact shall not be set aside unless clearly erroneous." That the Rule goes on to emphasize the special deference to be paid credibility determinations does not alter its clear command: Rule 52(a) "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous." Pullman–Standard v. Swint,* 456 U.S. [273] at 287, 102 S.Ct. 1781 [1789], 72 L.Ed.2d 66 [1982].

*The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' . . . rather than a 'tryout on the road.' " Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497 [2508], 53 L.Ed.2d 594, (1977). For these reasons, *review of factual findings under the clearly-erroneous standard—with its deference to the trier of fact—is the rule, not the exception.* (emphasis added). 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528–529.

This clarification of the clearly erroneous rule should be accepted by this Court.[1] *See also Estate of Tully,* 545 A.2d 1275 (Me. 1988); *First Trust Co. v. Union Depot Place,* 476 N.W.2d 178 (Minn.App.1991); *Stracka v. Peterson,* 377 N.W.2d 580 (N.D.1985); and *In re Nash,* 158 Vt. 458, 614 A.2d 367 (1991). In the interest of judicial economy, to avoid duplication of the trial court's efforts and to eliminate appeals promoted by de novo review, we should now hold that the clearly erroneous standard[2] applies to our review of

1. Two points need to be made in response to the Chief Justice's special writing. First, although federal authority is not binding on this Court, as pointed out by Chief Justice Miller as recently as 1993, "in an interpretation of like rules in our States' courts, it is appropriate to 'turn to the federal court decisions for guidance in their application and interpretation.' " (citation omitted). *Sander v. Geib, Elston, Frost Pro. Ass'n,* 506 N.W.2d 107, 122–123 (S.D.1993). The United States Supreme Court's interpretation of its own rule should be persuasive. Appellate courts in Minnesota, North Dakota, Maine and Vermont have abandoned de novo review under the clearly erroneous rule, finding *Anderson* persuasive. (*See* citations above). So, too, should this Court. Second, the special writing avoids any discussion of the serious shortcomings of de novo review. There is no doubt that the Justices of the Supreme Court can read as well as trial court judges, but that is beside the point. The question that begs to be answered here is, in light of the language of SDCL 15–6–52(a), the United States Supreme Court's interpretation of Rule 52(a), and the noted shortcomings of de novo review, why would this Court continue to superimpose de novo review on the clearly erroneous standard? De novo review clearly undermines the legitimacy of trial court decisions, inviting appeals that would be fruitless under the clearly erroneous standard. The fair market value issue in this appeal is a case in point. The users of our justice system should not have to endure the time, expense and risks which attend de novo review. The cost, not only to the parties, but to the judicial system itself, is, in my opinion, as well as the opinion of Justices White, Burger, Brennan, Marshall, Powell, Rehnquist, Stevens and O'Connor of the United States Supreme Court, a tremendous waste.

2. Federal Rule of Civil Procedure 52(a) now reflects the Supreme Court's opinion in *Anderson v. Bessemer City, supra.* It reads: "Findings of

a trial court's findings of fact regardless of the type of evidence presented at trial.

### b) Findings of Fact/Evidence

■ After reviewing all the evidence in this case, we are not left with a definite and firm conviction that a mistake has been made by the trial court. The findings of fact are not clearly erroneous. The determination of fair market value must be affirmed. SDCL 15–6–52(a); *Proceedings for Dep. in Court of Monies,* 417 N.W.2d 187 (S.D.1987); *Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D.1985).

We find no need to address the issues presented by Miller's notice of review given the disposition of the foregoing issues.

MILLER, C.J., and SABERS and KONENKAMP, JJ., concur in result.

TIMM, Circuit Judge, for AMUNDSON, J., disqualified.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

MILLER, Chief Justice, writing the majority opinion with respect to the issue of the correct standard of review.

■ We agree that the trial court's findings should be affirmed. We write separately because the minority attempts to adopt the wrong standard of review in arriving at this result. The minority would hold "the clearly erroneous standard applies to our review of a trial court's findings of fact regardless of the type of evidence presented at trial." This would conflict with our well-settled law. For purposes of appellate review, we have repeatedly distinguished between "live" testimony and evidence presented in document form. Under our long-standing rule, when reviewing findings based on documentary evidence we do not apply the clearly erroneous rule set forth in SDCL 15–6–52(a), but review the matter de novo. *Pankratz v. Miller,* 401 N.W.2d 543, 548 (S.D.1987); *In re Investigation of the Highway Construction Industry,* 396 N.W.2d 757, 758 (S.D.1986); *Leslie v. City of Bonesteel,* 303 N.W.2d 117 (S.D.1981); *Pearson v. Franklin Laborato-*

*ries, Inc.,* 254 N.W.2d 133, 140–41 (S.D.1977); *Ayres v. Junek,* 247 N.W.2d 488, 490 (S.D.1976); *Geo. A. Clark & Son, Inc. v. Nold,* 85 S.D. 468, 185 N.W.2d 677, 680 (1971), *cert. denied* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). *For application of the same rule to factual findings by administrative agencies, see Hendrix v. Graham Tire Co.,* 520 N.W.2d 876 (S.D.1994); *Foltz v. Warner Transp.,* 516 N.W.2d 338 (S.D.1994); *Zacher v. Homestake Mining Co.,* 514 N.W.2d 394 (S.D.1994); *Guthmiller v. South Dakota Dept. of Transp.,* 502 N.W.2d 586, 588 (S.D.1993); *Day v. John Morrell and Co.,* 490 N.W.2d 720 (S.D.1992); *Caldwell v. John Morrell & Co.,* 489 N.W.2d 353 (S.D.1992); *Lien v. Miracle Span Corp.,* 456 N.W.2d 563 (S.D.1990); *Lawler v. Windmill Restaurant,* 435 N.W.2d 708, 711 (S.D.1989); *Wold v. Meilman Food Indus., Inc.,* 269 N.W.2d 112 (S.D.1978).

As support for blanket application of the clearly erroneous test, the minority relies on a decision by the United States Supreme Court, *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Interpreting a federal rule identical to SDCL 15–6–52(a), the *Anderson* Court required clearly erroneous review regardless of the form of the evidence presented. *Id.* In so holding, the Court deferred to the trial judge's expertise in determining issues of fact. *Id.*

■ We are not convinced by the reasoning of *Anderson.* First, a federal court's reading of a federal rule has no binding force on this Court's interpretation of a state statute. Second, when evidence is presented via deposition, affidavit or exhibit, we are as capable of reviewing the record as the trial court. *Foltz,* 516 N.W.2d at 340–41; *State Auto Casualty Underwriters v. Ruotsalainen,* 81 S.D. 472, 479, 136 N.W.2d 884, 888 (1965). A trial judge's superior fact-finding abilities relate to his opportunity to observe and evaluate live testimony; when physical or documentary evidence is offered, the trial court is in no better position to intelligently

fact, *whether based on oral or documentary evidence,* shall not be set aside unless clearly erroneous, and due regard shall be given to the

opportunity of the trial court to judge of the credibility of the witnesses." (emphasis added).

weigh the evidence than the appellate court. *Id.*

Despite the high-powered arguments to the contrary, we decline to depart from our settled authority. In accordance with our well-established precedent, our Court will continue to apply the de novo standard of review to findings that are based on documentary evidence.

SABERS and KONENKAMP, JJ., concur.

TIMM, Circuit Judge, dissents.