#26214-rev & rem-SLZ

**2012 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MEGAN M. PETERSON,          Claimant and Appellant,

    v.

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY,         Employer and Appellee,

    and

SENTRY INSURANCE,          Insurer and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

\* \* \* \*

MICHAEL E. UNKE
Salem, South Dakota          Attorney for claimant
                                and appellant.


MICHAEL S. MCKNIGHT
MEGHANN M. JOYCE of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota          Attorneys for appellees,
                                employer and insurer.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 17, 2012

OPINION FILED **06/27/12**

ZINTER, Justice

[¶1.]        Megan Peterson worked at a nursing home owned by The Evangelical Lutheran Good Samaritan Society (Good Samaritan).  Peterson alleged that she sustained a work-related injury to her back when assisting a resident with a wheelchair.  Good Samaritan denied Peterson's claim.  Two doctors, who testified by deposition, disagreed whether Peterson suffered a work-related injury and whether employment was a major contributing cause of her back condition.  The Department of Labor (Department), after considering the depositions and Peterson's medical records, determined that Peterson failed to prove that she sustained a compensable work-related injury.  The Department also determined that Peterson failed to prove that her employment remained a major contributing cause of her condition and need for treatment.  The circuit court affirmed.  On de novo review, we reverse and remand.

*Facts and Procedural History*

[¶2.]        Peterson was twenty-two years of age at the time of the Department hearing and had a history of injuries.  In 2003, she slipped on wet stairs at her middle school and injured her left ankle.  The ankle injury was treated with ice, compression bandages, and crutches.  Although the injury resolved, Peterson continued to have occasional flare-ups.

[¶3.]        In 2007, Peterson began working for Good Samaritan as a certified nursing assistant.  On December 9, 2007, she sustained a work-related injury to her lower back while helping move a resident into bed.  Dr. Scott D. Tieszen, of Tieszen Chiropractic Clinic, treated Peterson's hips and back.  Following treatment, Dr.

Tieszen recommended that Peterson continue to wear a back brace. By January 2008, Peterson returned to work with no restrictions.

[¶4.] In early 2009, Peterson experienced an ankle flare-up involving swelling and pain because of the twelve-hour shifts she was working. Peterson received physical therapy at Prairie Rehabilitation, Hartford Therapy Services. She also began wearing a doctor-recommended walking boot. Peterson was wearing the walking boot while working her overnight shift on July 15-16, 2009.

[¶5.] Peterson testified that while working that overnight shift, she bent down to help a resident with a wheelchair foot pedal, she stood back up, and she felt a sharp pain go through her lower back. Peterson complained of back pain and asked her supervisor for pain medication. Peterson told her supervisor that Peterson thought she had pinched a nerve. She took Tylenol and completed her shift.

[¶6.] After work, Peterson went home to bed. When she awoke, she could not move from the waist down due to pain. An ambulance was called, and Peterson was transported to a hospital emergency room around 4 pm. The emergency room records note that Peterson "complain[ed] [of] low back pain 18 hours ago." Peterson also reported that she was going to physical therapy for her foot and that "last night [she] felt low back pain getting progressively worse." A CAT scan revealed a disk protrusion at the L5-S1 level. Peterson was medicated and released from the emergency room to bed rest at home. She then treated with her family physician, Dr. Dawn A. Flickema, at the McGreevy Clinic. Dr. Flickema recommended an epidural block, but Good Samaritan's insurer refused to pay for that procedure.

[¶7.] On August 25, 2009, Peterson sought medical assistance from Dr. David L. Hoversten, a board certified orthopedic surgeon. Dr. Hoversten performed a physical examination and reviewed Peterson's medical records from Hartford Therapy Services, the McGreevy Clinic, and the emergency room. Because the emergency room CAT scan was not definitive, Dr. Hoversten ordered an MRI. The MRI revealed a "dark disk" at L5-S1 that was "substantially bulging" and had a thirty percent loss of height. Peterson was terminated from Good Samaritan on September 1 because of work restrictions imposed by Dr. Hoversten.

[¶8.] Dr. Hoversten later opined by letter that Peterson's work activities independently caused her back discomfort, pain, and the need for evaluation and treatment. In a subsequent July 20, 2010 deposition, Dr. Hoversten testified that Peterson had a congenitally weak back and the flattened disk was the source of her pain. Dr. Hoversten also testified that both back injuries probably caused the disk problem and pain. Based on Peterson's history, Dr. Hoversten testified that Peterson suffered a work-related injury on July 15, 2009: he indicated that both back injuries had a substantial part to play in the deterioration of the L5-S1 disk. Dr. Hoversten further testified that Peterson's ankle problem played no causative role in her July 2009 back injury.

[¶9.] Prior to Dr. Hoversten's physical examination, Good Samaritan's workers' compensation insurance company retained Dr. Jerry J. Blow to review Peterson's medical records. Dr. Blow is a physiatrist practicing rehabilitation medicine. After reviewing some of Peterson's medical records, he opined by letter (before Dr. Hoversten's physical examination) that Peterson's lower back injury was

caused by her preexisting ankle problem and resulting impaired balance.  He also indicated that general deconditioning and obesity were contributing factors.  He opined that her back injury was not caused by her work.  Based on Dr. Blow's letter, Good Samaritan's insurer denied any workers' compensation benefits.

[¶10.]        Peterson filed a claim with the Department.  Both physicians testified by deposition.  The Department adopted Dr. Blow's opinion over the opinion of Dr. Hoversten and denied relief.  The circuit court affirmed.  Peterson now appeals to this Court.  She argues that she sustained a work-related injury and that her employment remains a major contributing cause of her condition and need for treatment.

*Standard of Review*

[¶11.]        The parties disagree whether the clearly erroneous or de novo standard of review applies to the Department's findings of fact.  Peterson points out that the Department's findings on causation were based solely on medical records and the depositions of Drs. Hoversten and Blow.  Peterson also points out we have often stated that "the matter is reviewed de novo when 'an agency makes factual determinations on the basis of documentary evidence, such as depositions' or medical records."  *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366-367 (quoting *Vollmer v. Wal-Mart Store, Inc.*, 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382 (citing *Watertown Coop. Elevator Ass'n v. S.D. Dep't of Revenue*, 2001 S.D. 56, ¶ 10, 627 N.W.2d 167, 171)); *accord Mudlin v. Hills Materials Co.*, 2005 S.D. 64, ¶ 5, 698 N.W.2d 67, 71; *Brown v. Douglas Sch. Dist.*, 2002 S.D. 92, ¶ 9, 650 N.W.2d 264, 268.

#26214

[¶12.] On the other hand, Good Samaritan points out that in the initial review of agency findings, SDCL 1-26-36 requires the circuit court to "give great weight to the findings made and inferences drawn by an agency on questions of fact." The circuit court must review the agency's findings to determine whether they are "[c]learly erroneous in light of the entire evidence in the record." SDCL 1-26-36(5). Good Samaritan also points out that at the next level of review, "[t]he Supreme Court shall give the same deference to the findings of fact, conclusions of law, and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo." SDCL 1-26-37. Further, a 2000 amendment to SDCL 15-6-52(a) provides that the circuit court's "[f]indings of fact, *whether based on oral or documentary evidence*, may not be set aside unless clearly erroneous . . . ." 2000 S.D. Sess. Laws ch. 91, § 1 (emphasis added). Good Samaritan points out that based on this amendment to SDCL 15-6-52(a), we have recently rejected the argument that findings based on documentary evidence and deposition testimony are reviewed de novo:

> This Court formerly reviewed documentary evidence and deposition testimony under the de novo standard. However, SDCL 15-6-52(a), [as amended in 2000], specifically provides that "findings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous."

*Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 17, 790 N.W.2d 52, 60 (alteration in original) (quoting *Gluscic v. Avera St. Luke's*, 2002 S.D. 93, ¶ 15, 649 N.W.2d 916, 919). Because SDCL 1-26-37 requires our review of the circuit court's decision to be the same as any other appeal from a circuit court, and because SDCL 15-6-52(a) requires clearly erroneous review of circuit court decisions based on documentary evidence, Good Samaritan contends that we must review the decision in this case

-5-

for clear error and not under the de novo standard. We take this opportunity to resolve the conflicts that may appear in these authorities.

[¶13.]     We are reviewing an appeal from circuit court. SDCL 1-26-37 (as amended in 1983) requires that our review of circuit court decisions reviewing agency appeals be conducted in the same manner as we would review any other appeal from a circuit court. Therefore, SDCL 1-26-37 would appear to require adherence to SDCL 15-6-52(a), which requires clearly erroneous review even if the decision is based on documentary evidence. But as we explained in *State, Div. of Human Rights ex rel. Miller v. Miller*, 349 N.W.2d 42, 46 (S.D. 1984), we are generally not reviewing the circuit court's findings in appeals from administrative agencies. We pointed out that a simultaneous 1983 amendment to SDCL 1-26-36 required circuit courts, for the first time, to either adopt the agency's findings and conclusions or enter their own. Because the fact finder's findings were thus assured to be in the record for our review, and because the 1983 amendments to SDCL 1-26-36 and 1-26-37 were so "intertwined," we noted that the literal language of SDCL 1-26-37 did not apply. *Miller*, 349 N.W.2d at 46. We explained that in reviewing a circuit court's decision under SDCL 1-26-37, we were actually reviewing the agency's findings.

> Even if we apply SDCL 1-26-37 as amended [requiring review of the circuit court's decision for clear error], . . . we [would then] decide whether the circuit court was clearly erroneous in determining that the agency was clearly erroneous. This reverts us to the agency record. . . . It follows that, in the final analysis, we still review [the agency record] essentially as did the circuit court.

*Id.* at 46 n.2; *In re Nw. Bell Tel. Co.*, 382 N.W.2d 413, 415 (S.D. 1986). Therefore, in reviewing the circuit court's decision under SDCL 1-26-37, we are actually making "the same review of the administrative tribunal's action as did the circuit court." *Miller*, 349 N.W.2d at 46; *In re S.D. Water Mgmt. Bd. Approving Water Permit No. 1791-2*, 351 N.W.2d 119, 122 (S.D. 1984) (stating that "despite the new language in [SDCL 1-26-37], this [C]ourt still reviews the administrative decision essentially in the same manner as did the circuit court"). Further, we perform that review of the agency's findings "unaided by any presumption that the circuit court's decision was correct." *Kermmoade v. Quality Inn*, 2000 S.D. 81, ¶ 10, 612 N.W.2d 583, 586 (alteration in original); *accord First Nat. Bank of Ft. Pierre v. S.D. State Banking Comm'n*, 2008 S.D. 12, ¶ 10, 745 N.W.2d 674, 676; *Meligan v. Dep't of Revenue and Regulation,* 2006 S.D. 26, ¶ 13, 712 N.W.2d 12, 17; *Thomas v. Custer State Hosp.*, 511 N.W.2d 576, 579 (S.D. 1994).

[¶14.] Thus, SDCL 1-26-37 does not necessarily preclude de novo review of appeals from circuit court involving agency findings. The standard of review depends on the nature of the issue on appeal and how the circuit court was required to review that issue under SDCL 1-26-36.[1]

---

1. SDCL 1-26-36 provides:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>     (1) In violation of constitutional or statutory provisions;
>     (2) In excess of the statutory authority of the agency;
>                                 (continued . . .)

[¶15.]     Under SDCL 1-26-36(5), factual findings of the agency are reviewed under the clearly erroneous standard.  Further, the 2000 amendment to SDCL 15-6-52(a) specifically provides that findings of fact "whether based on oral or documentary evidence, may not be set aside unless clearly erroneous . . . ."  Therefore, Good Samaritan argues that even though the agency decision in this case was based on documentary evidence, we must review the circuit court's decision (administrative findings adopted by the circuit court) for clear error rather than de novo.  An examination of the 2000 amendment does not support Good Samaritan's argument.

[¶16.]     The 2000 amendment to SDCL 15-6-52(a) was significant.  *See* 2000 S.D. Sess. Laws ch. 91, § 1.  Before the amendment, it was "well-settled" that "when reviewing [a circuit court's trial] findings based on documentary evidence [this Court did] not apply the clearly erroneous rule set forth in SDCL 15-6-52(a), but review[ed] the matter de novo." *First Nat'l Bank of Biwabik, Minn. v. Bank of Lemmon*, 535 N.W.2d 866, 871 (S.D. 1995) (collecting cases).  Further, notwithstanding SDCL 1-26-36, this Court applied the same de novo rule in appeals

---

(. . . continued)

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment.  The circuit court may award costs in the amount and manner specified in chapter 15-17.

involving factual findings by administrative agencies. *Biwabik*, 535 N.W.2d at 871 (collecting cases).

[¶17.]     *Biwabik* was a split decision. The minority, based on *Anderson v. Bessemer City*, 470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985), argued for clearly erroneous review of all findings, including those based on documentary evidence. The minority pointed out that the Supreme Court had interpreted the identical Federal Rule of Civil Procedure to require clearly erroneous review regardless of the form of the evidence presented. *Biwabik*, 535 N.W.2d at 869 (Timm, Cir. J., dissenting) (citing *Anderson*, 470 U.S. at 573-74, 105 S. Ct. at 1511-12). Nevertheless, this Court declined to adopt the Supreme Court's interpretation. The majority explained that appellate courts were "as capable of reviewing the record as the trial court. A trial judge's superior fact-finding abilities relate to his opportunity to observe and evaluate live testimony; when physical or documentary evidence is offered, the trial court is in no better position to intelligently weigh the evidence than the appellate court." *Biwabik*, 535 N.W.2d at 871-72 (majority opinion) (citations omitted). Thus, despite the "clearly erroneous" review specified in the pre-2000 version of SDCL 15-6-52(a) and SDCL 1-26-36(5), this Court continued to utilize de novo review of both circuit court and administrative agency findings if they were based on documentary evidence. *See Biwabik*, 535 N.W.2d at 872.

[¶18.]     In response to *Biwabik*, the 2000 Legislature enacted 2000 Session Laws chapter 91, § 1. This measure was introduced as House Bill 1060. Section 1 of House Bill 1060 amended SDCL 15-6-52(a) to explicitly require clearly erroneous

review of a circuit court's trial findings of fact "whether based on oral or documentary evidence." *Id.* Section 2 proposed this same amendment to SDCL 1-26-36, which applied to agency findings. Section 2 provided that administrative agency "[f]indings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous, and due regard shall be given to the ability of the agency to judge the credibility of the witness." House Bill 1060 § 2. But the House Judiciary Committee struck Section 2 of House Bill 1060. 2000 House Journal at 191. House Bill 1060 ultimately passed with only section 1 remaining. Thus, the 2000 Legislature required clearly erroneous review of a circuit court's trial findings based on documentary evidence, but the Legislature left intact the case law requiring de novo review of administrative agency findings based on documentary evidence.

[¶19.] In this case, the Department entered its causation findings on medical records and depositions, and the circuit court affirmed. Therefore, notwithstanding the amendments to SDCL 1-26-37 and 15-6-52(a), we review the Department's findings de novo. *See, e.g.*, *McQuay v. Fischer Furniture*, 2011 S.D. 91, ¶ 10, 808 N.W.2d 107, 110 ("However, 'when an agency makes factual determinations on the basis of documentary evidence, such as depositions or medical records,' our review is de novo." (quoting *Darling*, 2010 S.D. 4, ¶ 10, 777 N.W.2d at 366-67)); *Vollmer*, 2007 S.D. 25, ¶ 12, 729 N.W.2d at 382; *Watertown Coop.*, 2001 S.D. 56, ¶ 10, 627 N.W.2d at 171.

*Decision*

[¶20.]    In a workers' compensation dispute, a claimant must prove the causation elements of SDCL 62-1-1(7) by a preponderance of the evidence. *Grauel v. S.D. Sch. of Mines & Tech.*, 2000 S.D. 145, ¶ 11, 619 N.W.2d 260, 263. The first element requires proof that the employee sustained an "injury" arising out of and in the course of the employment. SDCL 62-1-1(7); *Bender v. Dakota Resorts Mgmt. Group, Inc.*, 2005 S.D. 81, ¶ 7, 700 N.W.2d 739, 742. The proof necessary for the second element ("condition") is dependent on whether the worker also suffered from a preexisting condition or a prior, compensable work-related injury. *See* SDCL 62-1-1(7). If the worker suffered from neither of these, the claimant must prove that the employment or employment related activities were a "major contributing cause" of the "condition" of which the employee complains. SDCL 62-1-1(7)(a). In cases involving a preexisting disease or condition, the claimant must prove that the employment or employment related injury is and remains a "major contributing cause of the disability, impairment, or need for treatment." SDCL 62-1-1(7)(b)*; see also Grauel*, 2000 S.D. 145, ¶ 9, 619 N.W.2d at 263 (citing SDCL 62-1-1(7)(a)-(b)). Finally, if "the injury combines with a preexisting work related compensable injury, disability, or impairment," the claimant must prove that "the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment." SDCL 62-1-1(7)(c).

[¶21.]    The parties here do not specifically identify which subpart of the "condition" element applies in this case. The doctors' answers to the attorneys'

questions use the language of all three subdivisions of SDCL 62-1-1(7). However, Peterson has not made a record requesting relief under SDCL 62-1-1(7)(c).[2] Further, the decision of the Department, the language of both briefs, Dr. Hoversten's diagnosis of a preexisting weak back, and Dr. Blow's opinion that Peterson's condition was related to a preexisting ankle condition all indicate that this is an SDCL 62-1-1(7)(a) and (b) case. In proving the major contributing cause requirement of those subsections, a claimant need not "prove that the work injury was 'the' major contributing cause, only that it was 'a' major contributing cause." *Brown*, 2002 S.D. 92, ¶ 23, 650 N.W.2d at 271.

[¶22.] Peterson argues that the Department and circuit court erred in adopting the expert testimony of Dr. Blow over the testimony of Dr. Hoversten. Peterson contends that Dr. Hoversten's causation opinion should have been adopted because he was the physician who actually examined Peterson, Dr. Hoversten's credentials were superior to Dr. Blow's, and Dr. Hoversten had a better understanding of the facts of the incident and Peterson's medical history. We agree.

[¶23.] The opinion of an examining physician should be given substantial weight when compared to the opinion of a doctor who only conducts a review of medical records. *See Darling*, 2010 S.D. 4, ¶ 19, 777 N.W.2d at 369. In this case, only Dr. Hoversten examined, treated, and personally took a history from Peterson.

2. There appears to be no dispute that Peterson sustained a prior work injury to the same disk in 2007. Additionally, Dr. Hoversten indicated that the 2009 injury independently contributed to Peterson's condition, the showing necessary for recovery under SDCL 62-1-1(7)(c). Nevertheless, Peterson makes no argument for recovery under SDCL 62-1-1(7)(c). Therefore, we express no opinion about compensability of the 2007 or 2009 incidents under SDCL 62-1-1(7)(c).

That is significant because Peterson's history was the major reason for the difference in the doctors' opinions. Dr. Hoversten's credentials were also superior to those of Dr. Blow. Dr. Hoversten is an orthopedic surgeon who has been board certified for almost twenty years. Dr. Blow was trained in physical medicine and rehabilitation, but had been unable to pass his board certification examinations on three occasions. At the time of his deposition, his only board certification was in independent medical examinations, a certification that involved a week-long course. Finally, as described below, Dr. Hoversten's opinion was more persuasive because his understanding of the facts of the incident was corroborated by other evidence, and he had a better understanding of Peterson's medical history. *See Engel v. Prostrollo Motors*, 2003 S.D. 2, ¶¶ 20-22, 656 N.W.2d 299, 302 (stating that of two expert doctors' opinions, one doctor's opinion was "more persuasive based on his credentials, his interaction with [the claimant], the clarity of his reasoning and the fact [his opinion was] substantiated by other evidence").

[¶24.] Both parties argue that the opposing physician expressed opinions based on incomplete medical information or faulty facts. "[A]n expert's opinion is entitled to no more weight than the facts it stands upon." *Jewett v. Real Tuff, Inc.*, 2011 S.D. 33, ¶ 29, 800 N.W.2d 345, 352. In this case, both physicians were unaware of certain facts and history when issuing their written opinions. Nevertheless, they adhered to their written opinions when learning of the omitted facts before their depositions.

[¶25.] From our review of the record, however, we believe Dr. Blow adhered to an incorrect view of the incident at work and failed to give sufficient

consideration to significant aspects of Peterson's medical history. In preparing his records review report, Dr. Blow only reviewed records involving Peterson's history from May 15, 2009, through August 17, 2009. Consequently, at the time Dr. Blow prepared his written report, he was not aware that Peterson had suffered a prior work-related injury to the same disk while lifting a patient in 2007. He also did not have Dr. Hoversten's records, which included a physical examination. Those records also included an MRI that reflected Schmorl's nodes showing a congenitally weak back and the flattening and bulging of the L5-S1 disk. At the time of his deposition, Dr. Blow became aware of this information and did not change his opinion. But he admitted that the 2007 incident was a work-related injury. This was significant because, as Dr. Hoversten explained, the 2007 work-related injury involved the same disc that "had an injury and started to deteriorate."

[¶26.] Dr. Blow's opinion was also based partially on his assertion that Peterson may not have suffered a work-related injury. Dr. Blow believed Peterson did not report either the work incident or the related onset of pain when Peterson was treated in the emergency room and by Dr. Flickema. Dr. Blow opined that if a person had developed acute back and leg pain from bending over to move a wheelchair pedal, the person would have related that work incident in the patient's subsequent treatment.

[¶27.] Contrary to Dr. Blow's belief, Peterson did report the work incident. When asking her supervisor for pain medication immediately after the incident, Peterson mentioned that she hurt her back: she indicated she thought she pinched a nerve. Additionally, the emergency room records reflect that Peterson

"complain[ed] [of] low back pain 18 hours ago," which would have been during her night shift at Good Samaritan. Those records also reflect Peterson reported that during the night of the injury, "[she] felt low back pain getting progressively worse." Even Dr. Blow's own records review reflects a physical therapy call while Peterson was in the emergency room where it was stated that Peterson hurt her back as Peterson claimed. That record indicated the injury occurred as Peterson "[b]ent over helping resident with foot pedal." Therefore, the injury and pain were reported, and a critical factual assumption underlying Dr. Blow's opinion was incorrect.

[¶28.] Finally, the record suggests that Dr. Hoversten based his opinion on more complete facts and a more reliable medical history. Before coming to the diagnosis expressed in his September 2009 letter opinion, Dr. Hoversten: performed a physical examination of Peterson; reviewed Peterson's records from Hartford Therapy Services, the McGreevy Clinic, and the emergency room; reviewed the CAT scan taken in the emergency room; and, ordered and reviewed an MRI of Peterson's back. We acknowledge that Dr. Hoversten did not at this point know that Peterson had been experiencing pain in her left ankle, that she had been wearing the walking boot while working her shift on July 15, 2009, and that she had been wearing that boot for nearly two days when she was injured. But, before Dr. Hoversten's deposition was taken, he became aware of those facts. He reviewed Dr. Blow's report and deposition opinion as well as the medical records from Tieszen Chiropractic Clinic. Thereafter, Dr. Hoversten capably explained why Dr. Blow's opinion was incorrect under the medical history and facts of this case.

[¶29.]　　　Ultimately, Dr. Hoversten's medical opinion was more persuasive than the opinion of Dr. Blow. Whether a claimant's employment is and remains a major contributing cause of her condition may be gleaned from the totality of a doctor's testimony. *See Wise v. Brooks Const. Servs.*, 2006 S.D. 80, ¶¶ 22-25, 721 N.W.2d 461, 468-70. We do not require a doctor to use the exact words of the statutes. *Id.* In this case, Dr. Hoversten indicated that Peterson suffered a work-related injury. He indicated that bending over to assist with the pedal of the wheelchair was an activity that could cause an injury or an aggravation of a prior injury. This type of normal employment activity may result in a compensable injury.

> [A]n employee does not have to have an accident or experience any trauma to his person before a medical condition will qualify as a compensable injury. It is sufficient that the disability was brought on by strain or overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employment.

*Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 899 (S.D. 1995) (alteration in original). Dr. Hoversten also explained why Peterson's ankle problem could not have played a causative role in the deterioration of her L5-S1 disk. Dr. Hoversten finally opined that the July 15, 2009 injury was a major contributing cause of her condition: "I think both of these [back injuries affecting the same place in the back], if they are correct, are work-related injuries, and I believe they have a substantial part to play in the deterioration of the L5-S1 disk, yes." We conclude Dr. Hoversten's opinion was sufficient to meet Peterson's burden of proving that her employment caused a work-related injury and that is and remains a major contributing cause of her back condition and need for treatment.

#26214

[¶30.]    Reversed and remanded for further proceedings before the

Department.

[¶31.]    GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and

WILBUR, Justices, concur.