#27022-a-SLZ

**2014 S.D. 83**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MICHAEL MARTZ,                                          Appellant,

v.

HILLS MATERIALS d/b/a HILLS
PRODUCTS GROUP, INC. and
WESTERN NATIONAL MUTUAL
INS. CO.,                                               Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

MICHAEL J. SIMPSON of
Julius & Simpson, LLP
Rapid City, South Dakota                    Attorneys for appellant.


ERIC C. BLOMFELT of
Eric C. Blomfelt & Associates, PC
Denver, Colorado                            Attorneys for appellees.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 6, 2014

OPINION FILED **12/10/14**

ZINTER, Justice

[¶1.]	In 2000, Michael Martz injured his shoulder while working at Homestake Mining Company and was paid workers' compensation benefits. In 2002, Martz injured the same shoulder while working for a subsequent employer, McLaughlin Sawmill (Hills Materials). Hills Materials began paying but later denied further benefits. We address two questions. First, whether Hills Materials was equitably estopped from denying liability after four years of paying benefits. Second, whether Hills Materials remained liable for benefits when its physicians opined that the prior Homestake injury was a "major contributing cause" of Martz's current condition, but Martz's physician opined that the subsequent Hills Materials injury "contributed independently" to his current condition.

*Facts and Procedural History*

[¶2.]	Michael Martz was employed by Homestake, which was self-insured for workers' compensation. In February 2000, Martz suffered a work-related injury to his left shoulder. The claim was accepted as compensable by the administrator of Homestake's workers' compensation program. Martz had rotator cuff surgery in November 2000. His shoulder related medical bills and impairment rating were paid by Homestake.

[¶3.]	Martz left Homestake and began working in construction performing odd jobs for the next two years. He then began working for Hills Materials, which was insured by Western National Insurance (Western). In November 2002, during the course of his employment with Hills Materials, Martz felt a "pop" in his left shoulder while moving a log. He incurred pain following this incident, and Dr.

Wayne Anderson became Martz's treating physician. Dr. Anderson also gave Martz an impairment rating in 2003. Western accepted the 2002 injury as compensable and began paying benefits.

[¶4.] Martz was authorized to return to work approximately six to eight weeks after the 2002 injury. However, his employment at Hills Materials terminated. For the next four years, Martz's employment involved maintenance work for Historic Bullock Properties in Deadwood.

[¶5.] In July 2005, while Martz was employed for Historic Bullock Properties, Hills Materials engaged Dr. Jeffrey Luther to perform an independent medical evaluation (IME) of Martz's then-existing condition. Dr. Luther opined that the prior injury at Homestake was a "major contributing cause" of Martz's then-existing pain and need for treatment. Based on that opinion, Hills Materials denied further benefits on August 9, 2005.

[¶6.] Homestake then requested a causation opinion from Dr. Anderson. On October 25, 2005, Dr. Anderson responded by referring to his 2003 impairment rating. Dr. Anderson noted that in 2003, he had assigned a 10% impairment as a result of the 2000 injury at Homestake and a 5% impairment as a result of the 2002 injury at Hills Materials. Without further explanation, Dr. Anderson opined that Martz's 2002 injury at Hills Materials "contributed independently to [Martz's] left shoulder condition and [then-existing] need for treatment." Because this opinion suggested that the 2002 injury at Hills Materials played causative role in Martz's then-existing condition, on November 8, 2005, Homestake also denied liability for

further benefits. Martz continued to see Dr. Anderson for complaints of pain, and Martz continued taking pain medication.

[¶7.] In February 2006, Hills Materials, through Western, asked Dr. Anderson to clarify his opinion regarding the 15% impairment rating. Dr. Anderson was asked whether the 10% component included impairment for any range of motion limitations. He was also asked if Martz's range of motion measurements changed before and after the 2002 injury. Dr. Anderson did not answer the latter question. He did, however, explain that the surgery following the 2000 injury qualified Martz for the 10% impairment "with normal range of motion," and the 5% impairment "was due to range of motion loss."

[¶8.] At about the same time (January 2006), Martz decided to pursue his workers' compensation claim against Hills Materials/Western. Martz's attorney requested that Hills Materials/Western be responsible for the 5% impairment rating, for certain identified medical expenses, and for other medical bills that had "not been paid." The next month, Martz's attorney followed up with a letter to Western to confirm a phone conversation in which Western, according to the letter, agreed that it was "going to be paying the medical bills that [Martz's attorney] provided [Western.]" Martz's attorney requested Gay Buchholz, Western's adjuster, to send a letter retracting its denial of benefits and agreeing to pay the outstanding medical bills. On March 31, 2006, Martz's attorney followed up with an additional letter stating: "I understand that you are going to be taking care of this man's medical bills for treatment of his shoulder injury." On May 10, 2006, Martz and the Western adjuster signed a Memorandum of Payment for Permanent Partial

Disability for the 5% impairment.  Western also restarted paying for treatment of Martz's left shoulder, and Western continued to do so until 2009.

[¶9.]        By 2009, Martz had been employed by two additional employers. Consequently, in August 2009, Hills Materials, through Western, asked Dr. Anderson "to clarify if [Martz's] ongoing work activities (since 2002) have aggravated his left shoulder."  Dr. Anderson referred to his 2003 impairment rating and noted that Martz had sustained no new injuries.  Dr. Anderson opined that the 2002 Hills Materials injury remained "the cause of [Martz's] left shoulder impingement and need for treatment as well as his current need for physical therapy."

[¶10.]        Hills Materials apparently questioned Dr. Anderson's opinion because it then engaged Dr. Jerry Blow to perform an IME.  Following that examination in November 2009, Dr. Blow, like Dr. Luther, opined that Martz's pain and need for treatment remained the result of the original 2000 injury at Homestake.  Dr. Blow explained that the second injury in 2002 at Hill's Materials only caused "a temporary aggravation of his preexisting left shoulder conditions," and that "in large part [Martz's current] condition [was] related to the original injury in 2000 [at Homestake]."  Based on this opinion, Hills Materials/Western denied further benefits.

[¶11.]        Martz subsequently petitioned the Department of Labor, contending that both employers were liable for benefits.  Homestake was granted summary judgment because the statute of limitations for claims against it ran in 2007.  Martz did not appeal that ruling.

[¶12.]     With respect to Hills Materials, the Department ruled on the two issues that are presented in this appeal. First, the Department rejected Martz's argument that promissory estoppel precluded Hills Materials from denying liability. The Department acknowledged that Western had paid benefits and medical expenses from 2006 to 2009, and that Martz's attorney wrote Western letters confirming conversations in which Western allegedly agreed to pay the benefits that were at issue at that time. The Department, however, concluded that promissory estoppel did not apply. The Department found that Western did not promise to pay benefits indefinitely into the future. The Department further found that Martz could not have reasonably expected such a promise. The Department finally found that Western could not have reasonably expected to believe that Martz would not protect his interests by preserving a timely claim against Homestake.

[¶13.]     Second, based on medical records and depositions, the Department adopted Dr. Luther's and Dr. Blow's opinions over Dr. Anderson's. The Department found that Martz failed to satisfy his burden of proving Hills Materials liable by showing that the 2002 injury was a "major contributing cause" of his current condition. The Department acknowledged that Dr. Anderson was Martz's treating physician, but the Department found that Dr. Anderson's opinion lacked analysis. In contrast, the Department noted that Drs. Luther and Blow supported their opinions with objective medical evidence. The circuit court affirmed the Department's decision on causation and promissory estoppel, and Martz appeals.

*Decision*

[¶14.]     Our standard of review is governed by SDCL 1-26-37.  *Vollmer v. Wal-Mart Store, Inc.*, 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382.  The agency's findings are reviewed for clear error.  *Id.*  However, findings based on documentary evidence, such as depositions or medical records, are reviewed de novo.  *Id.*  Questions of law are also reviewed de novo.  *Kuhle v. Lecy Chiropractic*, 2006 S.D. 16, ¶ 16, 711 N.W.2d 244, 247.

*Promissory Estoppel*

[¶15.]     Martz argues that Hills Materials was estopped from denying liability.  Martz contends that in early 2006, Western promised to continue to pay his medical bills.  Martz further contends that based on that promise, he altered his position to his detriment—he allowed the statute of limitations to run on his claim against Homestake.

[¶16.]     "Promissory estoppel may be invoked where a promisee alters his position to his detriment in the reasonable belief that a promise [will] be performed."  *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 848 (S.D. 1990).  In addition to a promise: "(1) the detriment suffered in reliance must be substantial in an economic sense; (2) the loss to the promisee must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise made."  *Id.*

[¶17.]     Martz argues that in 2006, Western promised to abandon its claim that Homestake was liable and promised to pay Martz's present and future medical bills.  Martz specifically argues that Western promised it would not take the position that

the 2002 injury was a temporary exacerbation of Martz's symptoms. Martz contends that Western's promise is exhibited in the letters Martz's attorney sent to Western. Martz also relies on the fact that Western actually paid Martz's 5% impairment and paid his medical bills from 2005 until 2009.

[¶18.]     Western, however, denies that it promised to pay medical benefits in perpetuity. Western points out that Martz never had direct communication with Western, the statements in the letters were those of Martz's attorney, and Martz introduced no evidence of a promise by a representative of Western. Western also argues that Martz could not have reasonably expected Western would pay medical expenses in perpetuity because new facts or circumstances could have arisen. Western finally argues that it could not have reasonably foreseen that Martz would allow the statute of limitations to run on his claim against Homestake. We agree with Western.

[¶19.]     The Department denied Martz's benefits because the only evidence supporting a promise, the letters from Martz's attorney, were hearsay. But even considering the letters, they did not establish the promise Martz asserts. We note that a promise for a claim of estoppel must reflect "an intention to act or refrain from acting in a specified way, so as to justify a promisee in understanding that a commitment has been made [.]" *Rhode Island Hosp. Trust Nat. Bank v. Varadian*, 647 N.E.2d 1174, 1179 (1995) (emphasis omitted) (quoting Restatement (Second) of Contracts § 2 (1981)). Furthermore, the promise must be established by clear and convincing evidence. *Hahne v. Burr*, 2005 S.D. 108, ¶ 18, 705 N.W.2d 867, 873.

[¶20.]     In this case, even if the letters are considered, they did not establish clear and convincing evidence of a Western commitment to abandon its doctors' temporary aggravation opinion and pay future medical benefits in perpetuity. The letters contain the words of Martz's attorney, not Western. Additionally, the letters only referred to then-existing medical bills, and Western's adjuster denied any promise to pay all future medical bills. The adjuster explained that she was not authorized to make such a promise and would have never done so. We agree that there was no clear and convincing evidence of either a promise to abandon the claim that the 2002 injury caused only a temporary impairment or a promise to pay medical benefits in perpetuity. As the Department found: "at best, the letters can only be interpreted to show that Western National would withdraw its denial that had been made and that it would pay the medical expenses in question at the time."

[¶21.]     Martz, however, argues that a promise should be found because Western paid Martz's workers' compensation from 2005 into 2009. Additionally, Western signed a memorandum of payment for the 5% impairment. However, employers and insurers have an obligation to pay claims promptly.[1] That obligation would be adversely affected if paying claims precluded the later denial of liability

---

1.     It is noteworthy that in seeking benefits from Western, Martz invoked SDCL 62-7-38. That statute requires that when there are multiple employers or insurers, the insurer providing coverage at the time of the second injury must "make immediate payment of the claim until all employers and insurers agree on responsibility or the matter is appropriately adjudicated by the Department of Labor and Regulation[.]" *See id.* Here, there was no agreement or adjudication of responsibility at the time the attorney's letters were written, and the failure to follow this type of immediate payment obligation may subject an insurer to liability for bad faith. *See generally Bertelsen v. Allstate Ins. Co.*, 2013 S.D. 44, ¶ 19, 833 N.W.2d 545, 555.

when sufficient medical evidence developed to justify a denial. Moreover, the letters were ambiguous regarding future benefits, and Western's adjuster expressly rejected any interpretation of the letters suggesting that they were addressing future medical care. Considering the letter's references to existing claims together with Western's response, Western, at the most, agreed to withdraw its denial and pay the medical expenses that were in issue in 2006.

[¶22.] Because there was no clear and convincing evidence to establish a promise, we need not address the other elements of promissory estoppel. Hills Materials was not estopped from denying liability for Martz's current condition and need for treatment.[2]

*Causation*

[¶23.] Martz argues that Hills Materials remains liable for benefits because he proved a sufficient causal relationship between his 2002 injury at Hills Materials and his current condition and need for treatment. Even if a work-related injury is undisputed, the claimant must establish that the injury caused the current condition. *Vollmer*, 2007 S.D. 25, ¶ 14, 729 N.W.2d at 383; *Peterson v. Evangelical*

---

2. Our decision today is different than the decision in *Hayes v. Rosenbaum*, 2014 S.D. 64, 853 N.W.2d 878. *Hayes* involved judicial estoppel, not promissory estoppel. *Id.* ¶ 12, 853 N.W.2d at 882. Judicial estoppel applied in *Hayes* because the Department, acting in a quasi-judicial capacity, accepted an employer's answer that admitted causation. *Id.* ¶ 30, 853 N.W.2d at 886-87. We held that employers may be estopped from taking a position inconsistent with an earlier position that is judicially accepted. *Id.* ¶ 22, 853 N.W.2d at 884. Here, Western's alleged acceptance of liability was not judicially accepted. Additionally, *Hayes* specifically recognized the distinction "between a claim's initial review that results in tendered benefits and what occurred [in *Hayes*]—expert testimony that led to an admission in a pleading that resulted in a dismissal." *Id.* ¶ 23.

*Lutheran Good Samaritan Soc.*, 2012 S.D. 52, ¶ 20, 816 N.W.2d 843, 849 ("In a workers' compensation dispute, a claimant must prove the causation elements of SDCL 62-1-1(7) by a preponderance of the evidence."). "The evidence necessary to support an award must not be speculative, but rather must be 'precise and well supported.'" *Vollmer*, 2007 S.D. 25, ¶ 14, 729 N.W.2d at 382 (quoting *Horn v. Dakota Pork*, 2006 S.D. 5, ¶ 14, 709 N.W.2d 38, 42). "Causation must be established to a reasonable degree of medical probability, not just possibility." *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 12, 777 N.W.2d 363, 367. "[T]he testimony of medical professionals is crucial in establishing that a claimant's injury is causally related to the injury complained of because the field is one in which [laypersons] ordinarily are unqualified to express an opinion." *Vollmer*, 2007 S.D. 25, ¶ 14, 729 N.W.2d at 382 (second alteration in original) (internal quotation marks omitted) (quoting *Rawls v. Coleman-Frizzell, Inc.*, 2002 S.D. 130, ¶ 21, 653 N.W.2d 247, 252).

[¶24.] There is no dispute that Martz suffered compensable work-related injuries to his shoulder in 2000 and in 2002. The question is whether the 2000 injury at Homestake or the 2002 injury at Hill's Materials was the cause of Martz's condition in 2009. Martz relies on Dr. Anderson's medical opinion. Dr. Anderson opined that the second injury at Hill's Materials "contributed independently" to Martz's 2009 disability, impairment, or need for treatment. Hills Materials relies on Drs. Blow's and Luther's opinions. Those doctors opined that the first injury at Homestake was a "major contributing cause" of Martz's 2009 condition. Martz argues that Dr. Anderson's opinion is more persuasive than Drs. Blow's and

Luther's. Martz also argues that Drs. Blow and Luther utilized the wrong causation standard.

[¶25.] SDCL 62-1-1(7) sets forth the causal relationship that an injured worker must establish between a work-related injury and the worker's subsequent condition, impairment, or need for treatment. "No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of [.]" SDCL 62-1-1(7)(a). However, "[i]f the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the . . . subsequent employment related activities contributed independently to the disability, impairment, or need for treatment." SDCL 62-1-1(7)(c). Under this statutory framework, the applicable causation requirement is dependent on whether a second work-related injury contributed independently to the worker's current impairment, disability, or need for treatment. In this case, only Dr. Anderson testified that the second injury at Hills Materials contributed independently to Martz's current condition. Drs. Blow and Luther implicitly disagreed. Therefore, in this case the question is more factual than legal. The applicable causation standard is dependent on which medical opinion is more persuasive.

[¶26.] The Department and the circuit court noted that Martz's causation evidence rested entirely upon Dr. Anderson's opinion. The Department and the circuit court found that Dr. Anderson's opinion lacked analysis, and therefore his opinion was unpersuasive when compared to those of Drs. Luther and Blow. We agree with the Department's and the circuit court's findings.

[¶27.]        Dr. Anderson treated Martz after the 2002 injury, gave an impairment rating in 2003, and reiterated that impairment rating as the basis for his 2005, 2006, and 2009 opinions.  Dr. Anderson was not deposed so his opinions must be evaluated based upon his treatment notes, impairment rating, and reports.  Dr. Anderson's treatment notes reflect that following the 2002 injury, he assessed Martz's condition as a shoulder strain with a possible cuff and cartilage tear.  By January 2003, however, after Martz had been treated in physical therapy, Dr. Anderson noted that Martz was doing "much better" and he had "good range of motion" of the shoulder.  By March 2003, Dr. Anderson noted that Martz was doing quite well, he had "full range of motion," and he should have no impairment.

[¶28.]        Two months later, on May 1, 2003, Dr. Anderson performed the impairment rating evaluation.  Based on Martz's surgery and loss of range of motion measurements, Dr. Anderson found a 15% impairment.  In a brief three paragraph report, he indicated that Martz's 2000 rotator cuff surgery "qualifi[ed] him for 10% upper extremity impairment."  He later explained in his 2006 report that Martz was assigned the 10% impairment as a result of the surgery and without respect to loss of range of motion.  But, without explanation, Dr. Anderson treated all of the loss of range of motion from both injuries (the 5% impairment) as "additional" impairment attributable only to the 2002 injury.  And although Dr. Anderson was specifically asked in 2006 whether Martz's range of motion measurements showed a change before and after the 2002 injury, he did not answer the question in his 2006 or 2009 reports.  Instead, he just referred to his impairment rating evaluation.  Thus, Dr. Anderson's records establish a total

impairment rating. But they do so without an explanation for his attribution of all of the loss of range of motion impairment to the second injury other than as a matter of mathematics. As Dr. Blow later pointed out in his deposition, Dr. Anderson's records did not indicate that he had compared Martz's loss of range of motion before and after the second injury.

[¶29.] In contrast, Drs. Luther's and Blow's causation opinions were supported by objective medical evidence explaining their attribution of causation to the two injuries. Dr. Luther's opinion was based on a comparison of Martz's continuing and ongoing complaints of pain after 2000 and an MRI reflecting no significant changes following the 2002 injury. Dr. Blow's opinion was based on: (1) MRI findings before and after the 2002 injury showing substantially the same condition before and after the injury, (2) a lack of a new tear in 2002, (3) EMG studies before and after the 2002 injury, (4) the fact that the complaints of numbness and tingling in Martz's left arm in 2009 were the same or very similar to those exhibited in 2000, but those symptoms were not present during his treatment for the 2002 injury or thereafter until 2009, and (5) the absence of the need for additional surgery after the 2002 injury. Dr. Blow also pointed out that Dr. Anderson's own treatment notes indicated that after a month of physical therapy following the 2002 injury, Martz's condition at that time was "well back to normal."

[¶30.] Martz, however, points out that Dr. Anderson was Martz's treating physician; Dr. Blow only saw Martz once, seven years after the second injury; and Dr. Blow did not review all of the medical records. Thus, Martz argues that the Department should have given Dr. Anderson's opinion more weight as he had

access to all medical records, especially records from 2001 that might have been "helpful" in shedding light on potential differences in Martz's range of motion before and after the 2002 injury.

[¶31.]     Martz is correct that "[t]he opinion of an examining physician should be given substantial weight when compared to the opinion of a doctor who only conducts a review of medical records." *Peterson*, 2012 S.D. 52, ¶ 23, 816 N.W.2d at 850.  However, "[t]he value of the opinion of an expert witness is no better than the facts upon which they are based." *Schneider v. S.D. Dep't of Transp.*, 2001 S.D. 70, ¶ 16, 628 N.W.2d 725, 730 (quoting *Johnson v. Albertson's*, 2000 S.D. 47, ¶ 25, 610 N.W.2d 449, 455).

[¶32.]     In this case, Drs. Blow's and Luther's opinions are based on substantial, objective medical evidence that was not mentioned by Dr. Anderson in his written opinions.  More importantly, we cannot give substantial weight to Dr. Anderson's opinion because, as previously explained, he provided an impairment rating but provided little if any medical analysis to support a causation opinion.  As Dr. Blow explained, Dr. Anderson's reports were based on his 2003 impairment rating, and an impairment rating evaluation is not the same as an opinion on causation.  Finally, even if Dr. Blow had reviewed the additional medical information that Martz indicates would have been "helpful," Dr. Blow testified that it would not have changed his opinion concerning the cause of Martz's condition.  Moreover, although Martz criticizes Dr. Blow for not having reviewed potentially helpful range of motion measurements taken in 2001, the record also fails to suggest that Dr. Anderson reviewed those records to formulate his opinion.

[¶33.] Ultimately, based on substantial, objective medical evidence, Drs. Blow and Luther opined that the second injury was merely a temporary exacerbation of Martz's first injury, and the first injury remained a major contributing cause of Martz's current condition and need for treatment. Based on all the medical evidence, we find Drs. Blow's and Luther's opinions more persuasive than Dr. Anderson's opinion. Because the opinions of Drs. Blow[3] and Luther are more persuasive, we affirm the Department's and the circuit court's determinations. The Department did not err in finding that Martz failed to meet his burden of proving that the 2002 injury was a major contributing cause of his current condition and need for treatment.

[¶34.] Affirmed.

[¶35.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

---

3. We find no merit in Martz's criticism of Dr. Blow based on his credentials. Dr. Blow's opinion was fully supported by Dr. Luther's opinion.