#28824-a-MES
**2020 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ALAN ANTHONY ARMSTRONG,      Claimant and Appellant,

     v.

LONGVIEW FARMS, LLP,      Employer and Appellee,

     and

TRAVELERS PROPERTY
AND CASUALTY,      Insurer and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge
* * * *

JAMES D. LEACH
Rapid City, South Dakota      Attorney for claimant and
appellant.


REBECCA L. MANN of
Gunderson, Palmer, Nelson
   and Ashmore, LLP
Rapid City, South Dakota      Attorneys for employer,
insurer and appellees.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 29, 2019
OPINION FILED **01/15/20**

#28824

SALTER, Justice

[¶1.] Alan Armstrong injured his left knee while working at Longview Farm, LLP (Longview Farm or Longview). The cost of Armstrong's initial treatment was paid by Longview and its workers' compensation insurer, but they denied liability for his total knee replacement surgery and post-operative treatment. In a bifurcated administrative proceeding, the Department of Labor (the Department) determined Armstrong's knee surgery and related treatment were not compensable. The Department found the work-related injury neither contributed independently, nor was a major contributing cause of his need for surgery. The circuit court affirmed the Department's decision, which Armstrong now appeals. We affirm.

## Background

[¶2.] Alan Armstrong worked for over six years at Longview Farm[1] in rural Charles Mix County. His primary responsibilities involved caring for gilts[2] until they weighed around 300 pounds and were then ready to be bred. He previously worked at Schwartz Farms, another pork producer, for approximately nine years.

[¶3.] Armstrong sustained two work-related injuries to his left knee prior to working at Longview Farm. The first occurred in Texas in the mid-1990's. Armstrong testified he was "irrigating cotton and something just clicked and it was really painful." He further testified that following surgery to repair his meniscus, his left knee was "good."

---

1. The parties' briefs refer to Armstrong's employer as both "Longview Farm" and "Longview Farms." We believe "Longview Farm" is the correct company name.

2. Gilts are female pigs that have not yet produced offspring.

[¶4.]    Armstrong's second injury occurred in 2005 when he slipped and fell on his left knee while he was working at Schwartz Farms. During arthroscopic surgery to repair Armstrong's knee,[3] Yankton orthopedic surgeon Dr. Don Swift discovered the presence of severe osteoarthritis. Dr. Swift's notes indicate that he discussed the option of a total knee replacement to address the severe osteoarthritis, but Armstrong wanted to forestall surgery as long as possible through conservative treatment. Dr. Swift offered Armstrong additional treatment, including lubricant injections, but the workers' compensation insurer for Schwartz Farms would not approve the treatments. In its view, Armstrong's ongoing condition was degenerative in nature and not caused by his work injury.[4] Armstrong did not challenge the insurer's denial by filing a petition with the Department of Labor.

[¶5.]    At several points in the years after his 2005 work-related injury, Armstrong's medical providers commented on his worsening left knee condition. For instance, a note from Scotland Medical Clinic in February 2015 states that "[h]e continues to struggle with . . . knee pain. This is a chronic problem for him but the pain continues to get worse."[5] Armstrong told his providers that he knew he needed knee replacement surgery, but testified that he was hoping to make it to "60-ish"

---

3.    Dr. Swift removed damaged cartilage, a portion of the meniscus, and a portion of the membrane lining the knee joint.

4.    As support for its position, Schwartz Farms' carrier cited the provisions of SDCL 62-1-1(7)(a), which state that "[n]o injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of . . . ."

5.    The note actually indicated that Armstrong had chronic pain in both knees.

before needing the surgery.[6] Armstrong further testified that he was making good money, had excellent work attendance, and never missed a day of work due to his left knee condition.

[¶6.] The injury giving rise to this workers' compensation case occurred on March 31, 2016. Armstrong was scraping the floor of Longview Farm's hog confinement building with a curved push blade. The blade caught on the flooring, causing him to trip. Armstrong testified that he landed on his left leg, which was "twisted up and . . . really painful." He stated that he experienced pain in his left knee and could not stand on it. A co-worker helped him to the break room and put ice packs on his knee. Armstrong went to the clinic in Scotland that day and was referred to Orthopedic Institute in Sioux Falls, where he was treated by Dr. Michael Adler, a board-certified orthopedic surgeon.

[¶7.] Dr. Adler ordered magnetic resonance imaging (MRI), which revealed "severe tricompartmental osteoarthritis[,] extensive degeneration and tearing of the lateral meniscus[,] chronic ACL tear[] [and] . . . degeneration of the medial meniscus." However, Dr. Adler noted no major acute injuries. He offered either conservative treatment or total knee replacement. Armstrong chose total knee replacement, because, as he testified, "they could do . . . cortisone shots, and, . . . that kind of stuff . . . [but] it wouldn't fix the problem, because there was damage."

[¶8.] Travelers Property and Casualty (Travelers), the workers' compensation insurer for Longview Farm, wrote Armstrong on April 27, 2016, and

---

6. Armstrong was 51 years old at the time of the Department's decision in this matter.

advised it had determined that his work injury was not a "major contributing cause" of his left knee condition. Instead, Travelers asserted the current condition was due to a chronic, preexisting condition. The letter also informed Armstrong that Travelers would not pay medical benefits after April 27, 2016.

[¶9.] Armstrong underwent bilateral total knee replacement surgery, performed by Dr. Adler, on May 2, 2016. Armstrong testified that he chose to have both knees replaced at the same time so he would only have to pay his out-of-pocket deductible once and miss less work. Although his right knee replacement was successful, Armstrong's artificial left knee became infected, requiring two additional surgeries to remove it and replace it with antibiotic spacers. After the second surgery, Dr. Adler referred him to the Mayo Clinic for additional treatment. Though his infection has now resolved, Armstrong states that he cannot afford the additional surgery necessary to complete his left knee replacement.

[¶10.] Longview terminated Armstrong on December 5, 2016. He filed a petition with the Department on January 17, 2017, alleging that Longview and Travelers "denied medical and compensation benefits without any reasonable basis . . . ." The parties agreed to litigate the causation issue separately.

[¶11.] Longview and Travelers engaged Dr. Benjamin Bissell, also a board-certified orthopedic surgeon, to conduct an independent medical examination (IME). In a subsequent letter, Dr. Bissell concluded that Armstrong's work injury did not combine with a pre-existing disease or condition to cause or prolong disability, impairment, or need for treatment "[because] it is clear that he had pre-existing severe osteoarthritis prior to the 3/31/2016 injury." During his deposition, Dr.

Bissell provided his expert opinion that Armstrong's work-related injury was not a major contributing cause of his need for knee replacement surgery. In Dr. Bissell's view, Armstrong's severe osteoarthritis was the cause of his inability to work after his March 31 injury. On re-direct examination Dr. Bissell confirmed this opinion over Armstrong's leading-question objection, which the Department overruled, concluding that Dr. Bissell's response "merely summarized" his previous testimony and therefore did not prejudice Armstrong.

[¶12.] For his part, Dr. Adler held a different view relating to causation. He opined that Armstrong's work-related injury was a major contributing cause of his need for left knee replacement "[b]ased on Mr. Armstrong's statement of his ability to do heavy work before his March 31, 2016, left knee injury[,]" but not after the injury. In his deposition testimony, Dr. Adler described Armstrong's condition as left knee osteoarthritis with an acute knee injury. However, the acute injury he identified was knee swelling and pain with no definitive medical diagnosis. Dr. Adler acknowledged that Armstrong likely met the diagnostic criteria for a knee replacement years earlier and further that Armstrong's "knee arthritis didn't get worse by March 31, 2016, compared to March 30, 2016." Instead, he based his causation opinions upon Armstrong's subjective pain, explaining that "[w]hatever happened on March 31[ ], 2016, was bad enough to put him over the edge."

[¶13.] At the administrative hearing to determine compensability, Dr. Adler and Dr. Bissell testified by deposition, and Armstrong testified in person. The Department found Dr. Bissell's testimony more persuasive, concluding that "[t]he weight of the evidence establishes that Claimant's pain and immobility were

primarily due to years of severe and degenerative osteoarthritis." The Department acknowledged that Armstrong's March 31 injury "did contribute to his disability" but determined it "was not a major contributing cause." Therefore, the Department concluded that Armstrong had not established by a preponderance of the evidence that his work-related injury was either a major contributing cause or independently contributed to his need for knee replacement surgery.

[¶14.]     Armstrong appealed the Department's decision to the circuit court, which affirmed the Department's ruling. Armstrong now appeals to this court, raising several issues restated as follows:

1. Whether the Department abused its discretion by allowing testimony from Dr. Bissell, which Armstrong asserts resulted from an improper leading question.

2. Whether the Department erred when it determined that Armstrong failed to prove causation under SDCL 62-1-1(7)(b) by establishing that his work-related injury remained a major contributing cause of his need for knee replacement surgery.

3. Whether the Department erred when it determined that Armstrong failed to prove causation under SDCL 62-1-1(7)(c) by establishing that his work-related injury contributed independently to his need for knee replacement surgery.

4. Whether the Department erred when it determined Armstrong did not prove causation for his post-surgical care.

**Standard of Review**

[¶15.]     We utilize the same standard of review used by the circuit court to review decisions by the Department. *Petrik v. JJ Concrete, Inc.*, 2015 S.D. 39, ¶ 10, 865 N.W.2d 133, 137. In this regard, the Department's evidentiary rulings "will not

be overturned unless error is demonstrated and shown to be prejudicial . . . ."

*McDowell v. Citibank*, 2007 S.D. 52, ¶ 26, 734 N.W.2d 1, 10 (citation omitted).

[¶16.]       Ordinarily, the Department's findings of fact are reviewed for clear

error, and its conclusions of law are reviewed de novo. *Jewett v. Real Tuff, Inc.*,

2011 S.D. 33, ¶ 22, 800 N.W.2d 345, 350. "However, findings based on documentary

evidence, such as depositions or medical records, are reviewed de novo." *Martz v.*

*Hills Materials*, 2014 S.D. 83, ¶ 14, 857 N.W.2d 413, 417 (quoting *Vollmer v. Wal-*

*Mart Store, Inc.*, 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382).

## Analysis

### *Objection to Leading Question*

[¶17.]       In the workers' compensation setting, we have previously stated that

the "Department's hearing officers . . . must apply . . . [the] rules of evidence." *Kurtz*

*v. SCI*, 1998 S.D. 37, ¶ 24 n.8, 576 N.W.2d 878, 886 n.8 (citing SDCL 1-26-19). Our

rules of evidence provide that "[l]eading questions should not be used on direct

examination except as necessary to develop the witness's testimony." SDCL 19-19-

611(c) (Rule 611(c)).

[¶18.]       Here, counsel for Longview and Travelers asked the following question

during Dr. Bissell's redirect examination:

> At one point [Armstrong's attorney] was asking you if you had
> any other theory or if there was a theory that you had come up
> with to explain why Mr. Armstrong could work at the hog farm
> prior to March 31st but then could not after March 31st, 2016.
> Couldn't the theory just be that he had severe osteoarthritis in
> his knee?

[¶19.]       Dr. Bissell testified that it was, indeed, possible that the reason

Armstrong could not work after the March 31 injury was because he suffered from

severe osteoarthritis. This testimony was consistent with Dr. Bissell's prior opinion letter and earlier testimony. The Department overruled Armstrong's leading-question objection.

[¶20.]     Assuming, without deciding, that Rule 611(c)'s general prohibition against leading questions applies during re-direct examination, as it expressly does for questions "on direct examination[,]" we see no abuse of discretion. The question merely restated previous testimony by Dr. Bissell and did not elicit a new opinion. Further, even if the question violated Rule 611(c), which we do not hold, we agree with the Department and the circuit court that Armstrong has failed to demonstrate how he was prejudiced. *See State v. Brown*, 285 N.W.2d 843, 845 (S.D. 1979) (holding we will not disturb a decision to allow the use of leading questions absent an abuse of discretion or prejudice to the complaining party); *see also City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 103 (S.D. 1994) (determining that the "City must establish that the evidence admitted was . . . prejudicial").

***Causation under Workers' Compensation Statutes***

[¶21.]     The definition of an "injury" under South Dakota workers' compensation statutes is limited to an "injury arising out of and in the course of employment, and does not include a disease in any form except as it results from the injury." SDCL 62-1-1(7). "An injury is compensable only if it is established by medical evidence" and satisfies one of three causation standards, two of which implicate preexisting conditions. *Id.* "[A] claimant must prove the causation elements of SDCL 62-1-1(7) by a preponderance of the evidence." *Peterson v.*

*Evangelical Lutheran Good Samaritan Soc'y*, 2012 S.D. 52, ¶ 20, 816 N.W.2d 843, 849.

[¶22.]     When a claimant experiences a work-related injury that combines with a preexisting condition or injury, compensability may be determined either under SDCL 62-1-1(7)(b) or SDCL 62-1-1(7)(c).  Subsection (b) provides as follows:

> [I]f the injury *combines with a preexisting disease or condition* to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains *a major contributing cause* of the disability, impairment, or need for treatment.

(Emphasis added.)  Subsection (c) states:

> [I]f the injury *combines with a preexisting work related compensable injury*, disability, or impairment, the subsequent injury is compensable *if the subsequent employment or subsequent employment related activities contributed independently* to the disability, impairment, or need for treatment.

(Emphasis added.)  In *Byrum v. Dakota Wellness Foundation*, we differentiated subsections (b) and (c) by stating that:

> [W]hile both subsection (b) and subsection (c) deal with preexisting injuries, *the distinction turns on what factors set the preexisting injury into motion*; if a preexisting condition *is the result of an occupational injury* then subsection (c) controls, if the preexisting condition *developed outside of the occupational setting* then subsection (b) controls.

2002 S.D. 141, ¶ 15, 654 N.W.2d 215, 218 (emphasis added).

### *Causation under SDCL 62-1-(7)(b)*

[¶23.]     Under the causation standard set out in SDCL 62-1-1(7)(b), "[t]he question is whether th[e] work-related injury remained a major contributing cause

. . . ." *Jewett*, 2011 S.D. 33, ¶ 22, 800 N.W.2d at 350. "[P]roof of causation 'must be established to a reasonable degree of medical probability, not just possibility.'" *Id.* ¶ 23, 800 N.W.2d at 350 (quoting *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 12, 777 N.W.2d 363, 367).

[¶24.] Here, the record contains uncontroverted evidence of Armstrong's pre-existing degenerative osteoarthritis as it grew worse in the years leading up to the March 31 injury. Further, there is no evidence to support the view that Armstrong's osteoarthritis was related to his employment, either at Longview Farm or any previous employer. Armstrong was a candidate for total knee replacement for 11 years prior to his injury and during that time his medical providers noted he was experiencing ongoing, worsening pain in *both knees*. The fact that the March 31 injury may have been the unfortunate tipping point of Armstrong's knee symptoms does not mean that it displaced the degenerative effects of his preexisting condition.

[¶25.] The testimony from both Dr. Adler and Dr. Bissell supports the conclusion that Armstrong's work-related injury was not a major contributing cause of his need for knee replacement surgery. In Dr. Adler's note from April 21, 2016, he wrote that "the MRI . . . in essence shows significant chronic arthritic changes. No major acute injuries." In fact, Dr. Adler recommended conservative treatment and agreed that knee replacement was not a necessity. Dr. Bissell testified that Armstrong's MRI results showed "severe degenerative changes with complete cartilage loss," which he testified was "bone on bone arthritis" that was not an acute injury. Dr. Bissell also testified that Armstrong's work injury was not a major

contributing cause of the knee replacement because "multiple medical records prior to that date . . . already . . . established that he would need knee replacements eventually."

[¶26.] Armstrong's causation argument rests upon Dr. Adler's opinion that the March 31 injury prompted the need for treatment of his previously asymptomatic knee. However, we have previously rejected a similar argument that relegated the causation standard of SDCL 62-1-1(7)(b) to an elementary cause-in-fact determination. *See Jewett*, 2011 S.D. 33, ¶ 24, 800 N.W.2d at 351.

[¶27.] In *Jewett*, the claimant suffered from severe osteoarthritis in his knee, which was discovered only while undergoing arthroscopic surgery to remove a "loose body" following a work-related injury. *Id.* ¶¶ 4-5, 800 N.W.2d at 346-47. The claimant experienced knee pain and instability after the surgery, which led to a recommendation for a total knee replacement. *Id.* ¶ 7, 800 N.W.2d at 347. His treating physician opined that the claimant's employment was a major contributing cause under SDCL 62-1-1(7)(b) because it made a "previously asymptomatic knee symptomatic[]" and left him with "symptoms that plagued him even after arthroscopic surgery." *Id.* ¶ 24, 800 N.W.2d at 351. However, in the absence of medical evidence to establish that the claimant's employment "remain[ed] a major contributing cause of . . . [the] disability" after successful arthroscopic surgery, we affirmed the Department's decision to deny benefits related to the knee replacement. *Id.* ¶¶ 24, 32, 800 N.W.2d at 351, 353.

[¶28.] The record here is similarly insufficient to satisfy the particular causation standard of SDCL 62-1-1(7)(b). Though the medical evidence could

broadly establish that Armstrong's employment was a but-for cause of his knee replacement surgery, Dr. Adler's opinions do not attribute Armstrong's need for the surgery to anything other than his pre-existing osteoarthritis. *See Grauel v. S.D. Sch. of Mines & Tech.*, 2000 S.D. 145, ¶ 21, 619 N.W.2d 260, 265-66 (holding claimant's medical evidence insufficient to establish causation amid contrary evidence that remaining symptoms after arthroscopic surgery were due to pre-existing degenerative arthritis).

[¶29.]       Under the circumstances, we do not believe the Department erred when it concluded that Armstrong's work-related injury, in combination with his preexisting condition, did not remain a major contributing cause of his "disability, impairment, or need for treatment." SDCL 62-1-1(7)(b). As the Department's Administrative Law Judge (ALJ) indicated, the evidence here supports the opposite conclusion—that the degenerative effects of Armstrong's osteoarthritis were profound and advanced well before the March 31 injury. Given the state of the largely undisputed medical evidence, the ALJ properly accepted Dr. Bissell's reasonable conclusion that knee replacement surgery was imminent even without the work-related injury.

### Causation under SDCL 62-1-1(7)(c)

[¶30.]       Subsection (c) reflects South Dakota's adoption of the "last injurious exposure rule," which we apply when considering successive injuries in workers' compensation cases. *See Arends v. Dacotah Cement*, 2002 S.D. 57, ¶ 18, 645 N.W.2d 583, 588-89. Under SDCL 62-1-1(7)(c), "the applicable causation requirement is dependent on whether a second work-related injury contributed independently to

the worker's current impairment, disability, or need for treatment." *Martz*, 2014

S.D. 83, ¶ 25, 857 N.W.2d at 420. Because SDCL 62-1-1(7)(c) contemplates a

"preexisting work related compensable injury, disability, or impairment," we have

observed that the Legislature intended subsection (c) to assist with assigning

responsibility between a former or subsequent employer or insurer—not

determining a question of causation between an employer and employee. *Arends*,

2002 S.D. 57, ¶ 19, 645 N.W.2d at 589; *see also Titus v. Sioux Valley Hosp.*, 2003

S.D. 22, ¶¶ 12-15, 658 N.W.2d 388, 390-91 (quoting *St. Luke's Midland Reg'l Med.*

*Ctr. v. Kennedy*, 2002 S.D. 137, ¶ 20, 653 N.W.2d 880, 886 (detailing analysis to

consider "whether the successive injury is a mere recurrence or an independent

aggravation of the first injury[]")).

[¶31.]      Here, SDCL 62-1-1(7)(c) is inapplicable. Although Armstrong

sustained a work-related injury in 2005, it was only partially compensable. He

returned to work after arthroscopic surgery to repair or remove tissue in his knee.

The osteoarthritis Dr. Swift detected remained, of course, but Armstrong did not

challenge the decision of his then-employer and its insurer to deny additional

medical benefits based upon their view that the degenerative condition was not

caused by his work injury.[7] Nor does the existing medical evidence in this record

---

7.      Longview does not argue that the March 31, 2016 work-related injury
        triggered a recurrence of the 2005 injury. Instead, it contends the last
        injurious exposure rule does not apply here given the lack of prior
        compensable injury, adding alternatively that even if the rule applied, it
        would not assist Armstrong because he has failed to demonstrate the more
        recent injury "contributed independently" to his need for treatment.

support the conclusion that Armstrong's degenerative osteoarthritis is related to his work.

[¶32.]     Even if Armstrong's 2005 injury were compensable, we agree with the Department that Dr. Adler's testimony failed to establish that the March 31 injury contributed independently to Armstrong's need for a total knee replacement. Although Dr. Adler notes Armstrong could perform his job duties before the injury but not after, the Department correctly determined that this bare fact "does not constitute medical evidence" because it does not explain "how Claimant's injury contributed independently to Claimant's condition, especially considering that Claimant was already suffering the effects of osteoarthritis a[t] the time of his injury."

[¶33.]     This is particularly true given the uncontroverted evidence, highlighted by Dr. Bissell's testimony, that Armstrong had been a candidate for a total knee replacement for many years. Armstrong's own testimony and his medical records reveal that his earlier decision to defer the surgery was based on his relatively young age. His decision to undergo surgery after the March 31 injury reflects his determination to forego conservative treatment and proceed with the knee replacement. Perhaps most telling in this regard is the fact that Armstrong had both knees replaced because of the degenerative changes resulting from his osteoarthritis—not just the left knee impacted by the March 31 injury.

[¶34.]     Under the circumstances, we can discern no error in the Department's decision to prefer the opinions of Dr. Bissell. *See Martz,* 2014 S.D. 83, ¶ 23, 857 N.W.2d at 419 (quoting *Vollmer,* 2007 S.D. 25, ¶ 14, 729 N.W.2d at 382 ("The

testimony of medical professionals is crucial in establishing that a claimant's injury is causally related to the injury complained of because the field is one in which laypersons ordinarily are unqualified to express an opinion.")). Dr. Bissell's opinions are supported by medical records that demonstrate Armstrong's preexisting osteoarthritis condition is not related to any prior or subsequent work-related injury. These records also demonstrate that knee replacement surgery was, at a minimum, probable and very much contemplated by Armstrong and his doctors long before the March 31 injury.

### *Causation for post-surgical care*

[¶35.]     Based on our conclusion that Armstrong has failed to prove causation under either SDCL 62-1-1(7)(b) or SDCL 62-1-1(7)(c), it is unnecessary to consider the issue of causation for Armstrong's post-surgical care.

[¶36.]     We affirm.

[¶37.]     GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and WILBUR, Retired Justice, concur.